Good morning, Your Honors. May it please the Court, I'm Julie Ganz on behalf of the Equal Employment Opportunity Commission. This is an appeal of summary judgment in a case alleging that River Region Medical Center violated the Americans with Disabilities Act when it refused to accommodate Beatrice Chambers' disability and fired her when she attempted to return to her job in the GI lab at the hospital for shoulder surgery and a medical leave. The Commission offered sufficient evidence to support a finding that Chambers was a qualified individual who could perform her job as a licensed practical nurse or tech in the hospital's GI lab with either of two reasonable combinations that she requested. She filed a temporary disability claim with the disability insurer she had through her employer the day after she was terminated. What did she say in that application? Well, I have the application here. It's a one-page form. She checked that the date of her return was unknown. That was all she put on her claim and her diagnosis of left rotator cuff tear. Her doctor put on his form that the date of temporary total disability, the end date, was unknown as well. It was those statements that the District Court believed stopped the Commission from arguing that she was qualified within the meaning of the ADA. However, short-term disability is a temporary safety net for short-term, relatively minor ailments. The Court applied Cleveland v. Policy Management System to this case to dismiss the claim, but the cases are very different. First of all, Cleveland involved permanent, serious disabilities lasting more than one year and statements and applications made to the Social Security Administration. The Court, in that case, found that the two claims could exist side-by-side because of the different definitions of disability in the Social Security Act and the ADA. Similarly, here, in short-term disability policies, because they're not designed to have the employee go back to work, but to recover for a brief period and then go back to work, short-term disability does not envision reasonable combination. Was she on leave without pay or with pay for the 12 weeks of the FMLA? She used the company's short-term disability policy on sick leave while she was out under the FMLA leave, which is a paid, unpaid period of 12 weeks. And she had 245 hours of sick leave remaining at the time that she was fired, yet she was not permitted to take an additional two weeks of leave, which is the first reasonable accommodation she requested when she realized that her shoulder was not completely healed and her date of return was slightly earlier than she had anticipated. I mean, this may just reify that there's a fact issue, but I don't understand how the doctor released her to return to light-duty work, no pushing and pulling, exceeding 10 pounds, and then said she's temporarily disabled, and then he didn't release her to return to work until December 11, right? Well, the key to that, Your Honor, is the fact of reasonable accommodation. The short-term disability application didn't ask whether she could perform the job with or without reasonable accommodation. At the same time that the doctor released her to work with limited use of her left arm, he then signed off on her short-term disability claim after she had been fired and been told that she could not return to work. So the commission offered substantial evidence that there were two reasonable accommodations, reasonable on their face in the run of cases, that would have allowed her to return to her job with full use of her arm two weeks later, or by modifying her duty slightly during the two weeks until it took to recover. But she never asked for that seasonably, right? For the modification? Right. Well, this Court has held in Chevron that her submission of the doctor's release to return to work constituted a request for reasonable accommodation. But she didn't put that, she didn't give that to Vicksburg until the very last day of her FMLA, right? October 12th. Well, she, actually, Your Honor, the timeline is October 7th is when she met with Pat Watson in the HR department. She encouraged her to go get the additional two weeks of leave. Sandra Agnon denied those two weeks. And then she went back to HR and Watson said, well, you better get your doctor to release you to work to sign a release. And the chambers testified that that's what she did. There was a Columbus Day weekend holiday, so the next day, I think it was the 11th, that the Dr. Porter's office actually submitted, that was the 11th, the return to work with limited use of left arm and the pushing and pulling restriction of under 10 pounds. And there was some discussion of what to do about chambers, but no one called the doctor to get clarification about what limited use of left arm might be. Instead, Pat Watson the following day said that she, Agnon had talked to her boss and they weren't going to let her come back to work and she'd already been replaced. So that was the 12th. Then on the 14th, she received an official letter of termination from Hal Harrington, who's the head of HR, stating that they could not extend her leave and for that reason she was being terminated effective the 14th. So that was the day. At what point did they offer her a clerical job? They offered her a clerical job shortly after her surgery in August of 2011. Chambers testified that that was the only time she was offered a desk job and her doctor said he was not ready to release her to work at that time. Even to do a clerical work? It was too soon after her surgery. It was only, she said she saw Agnon after she had her staples removed and she had asked when she could come back to work. So, excuse me, after, so that was never reiterated to her, at least the evidence suggests that she was never told again that that was an option at the time of her termination. She said to Pat Watson, I'll see you on the 13th, assuming that she would be going to work that day. She also testified that she was shocked to receive the phone call telling her that she'd been terminated. So if she had been offered a clerical job, she would not have been shocked. In addition, none of- She didn't bring that up either though, huh? Bring what up? Clerical. Clerical work. Oh, did she raise it? Yeah. She did, I'm not clear on whether she raised it. She submitted the return to work with limited duties, so a clerical job would have accomplished the same thing. And the, when she said she asked for the two weeks of leave to Agnon, she testified that Agnon threw the paper back at her and said, just said, I'm not signing this. She never said, well, remember, you have a clerical job open to you, why don't you do that? In addition, Watson and HR never mentioned the possibility of a clerical job at the time, nor did any of the official entries or documents from the hospital ever mention the fact that she had rejected that. How did EEOC argue this in the district court when they filed the motion for- Summary judgment? Summary judgment. Yes. And I'll get to this other issue in a minute, but they assert that all EEOC said was something like, it's not fair to allow, well, what the district court says is, the only explanation that the EEOC offers is the fact that Chambers applied for total disability after her total temporary, after her termination on October 12th. The Fifth Circuit rejected the sufficiency of this explanation. Is that all the EEOC? No, Your Honor, that's not accurate at all. The commission argued in its opposition to summary judgment brief that the two, that being qualified within the meaning of the ADA was not mutually exclusive with being disabled within the meaning of the short-term disability benefits policy. The commission then went on to say that the application that was submitted did not mention anything about reasonable accommodation, did not ask about reasonable accommodation, and then offered substantial evidence about the two reasonable accommodations that Chambers requested. Now, what are the two? The two, one is light, light duty? One was the two weeks of additional leave. Oh, the leave, Your Honor. And then was the return to work immediately with the light duty modification. Now, the commission offered evidence from Chambers' coworkers that they had not been overburdened in the months that she had been on FMLA leave and that it would not have been time to cover for two additional weeks. The commission also offered evidence to the district court that the job that Chambers performed was more akin to a tech job and not an LPN job and did not require heavy lifting or a lot of physically demanding work. That was to show that the modification that she requested would have been a reasonable accommodation. Now, the court held in Cleveland that to explain any apparent inconsistencies between applying for disability benefits and stating that you are qualified under the ADA, you are required to offer evidence from which a reasonable jury could conclude that notwithstanding those statements, reasonable accommodation was possible. And this court has also said you are required to make a particularized showing that reasonable accommodation was possible. Doesn't all this case turn on whether the duties of the job required her to lift 26 to 50 pounds as opposed to 10 pounds or less? Oh, no, Your Honor. There is evidence in the record that that was not an essential function of the job, although it states that lifting heavier weights... But there's a fact issue about that. That's correct. It's a fact issue. Because that's the keystone of their argument. Well, it is a fact issue which would make summary judgment inappropriate on that issue given that the Commission offered evidence that heavy lifting was not a part... Sorry, I was going to say even if it is an essential function, that does not end the Commission's case because Chambers also requested two weeks of leave. And I personally have a problem about that because the law says that an employer only has to give 12 weeks of leave. Only under the... That's a duty under the FMLA leave, but the two statutes are different and an employer must comply with both statutes. So unless it could show that the additional two weeks of leave was an undue hardship, it would still be required to extend the leave by two weeks or give some other reasonable accommodation. What's your best case for that? That the FMLA does not replace the plant. Well, they're completely different statutes. Maybe I'm wrong. I just... Well, the district court held that and there was a very similar case in Walker in a district court case held that... Well, the ADA is just a completely separate statute. I'm not sure what the authority... Well, I understand that, but I mean my point is that before the FMLA, they weren't required to give her any time. I mean, they weren't required to take her back after surgery at all, right? Before the FMLA. Well, they would have under the ADA, is that what you're saying? No, because the fact that you have surgery may or may not suggest that you're going to be... If she... Before the FMLA, if she came to them and said, I have the rotator cuff and they say, we think you need to be able to move these heavy patients around and so on, we're going to give you three weeks to recover, but then we don't know what's going to happen, right? Before the FMLA. Oh, well, there was never we don't know what's going to happen. This is a rotator cuff repair with a... I'm sorry. I'm just... I'm taking you down the rabbit hole. Leave is only unreasonable if there is no end date in sight and it's unlimited and indefinite, but the ADA would have required them to provide leave to recover from the surgery, as does the FMLA leave. They're just different types of statutes and they both... People can take... Individuals can take both FMLA leave and ADA leave unless the defendant could show, the hospital could show that it would have been an undue burden and they made no showing on that. All right. Well, the other question I have is, what do you do about this? Your case looks really good unless you look at Mr. Bronner's notes and I realize that the district court excluded those, but they would come in on trial, would they not? Right, Your Honor. And she's testifying... And she is telling Mr. Bronner, it seems to me these are admissions against interest. Yeah, we did have to lift 26 to 50 pounds with regard to moving these patients around all the time. Well, first of all, Bronner testified that she told him that she didn't have to lift heavy weights. That's not what his notes say. Right. Well, that's why we didn't want them to come in because we need to clarify what he actually meant and what questions were being asked. But even if she did admit that, there is ample evidence in the record that heavy lifting was not an essential function of the job. For one thing, her coworker testified that they rarely had to lift anything, never had to lift anything more than 10 pounds. She also performed her job injured up until the time of surgery for at least several months without any problems or any write-ups. And so that suggests that heavy lifting was not a huge part of the job. We also introduced evidence that the main duties were more washing scopes, preparing the room, not patient care. So even with Bronner's notes, there's plenty of other evidence that heavy lifting was not an essential function of the job. So the case would definitely not turn on that, Your Honor. Okay. Thank you, Ms. Gantz. Mr. Manuel? May it please the Court, my name is Will Manuel. I'm here on behalf of Vicksburg Healthcare. The important thing to note is that summary judgment was granted in this case based on Cleveland because of the inconsistencies. And what I think that the Court focused on there was there's actually two inconsistencies in the applications for temporary disability benefits. One is the obvious one in which both the doctor and Ms. Chambers were saying that she was totally disabled. That is obviously inconsistent with saying that she was a qualified individual under the ADA. But the second one that is also very important is that they stated that the length of the disability and the duration of the incapacity was unknown. Now this is also inconsistent with exactly what she was asking for in her accommodation. If you listen, there's a whole lot of discussion or you read in their briefs, there's a lot of discussion about that all they were asking for was a two-week long extension. Now the record itself shows that that is not true because Ms. Chambers testified in her deposition that she actually had to tell them that that will get me to my next doctor's date but I don't know for sure if I'm going to be released or returned to work. Well the biggest inconsistency to me with regard to the disability benefit application is at the same time she is saying that she can come back and return to work in two weeks, the very next day after she's terminated, she says it's an unknown duration. And that's not the only one that we have. Let me ask you a question. Do we have the terms of the total of that disability policy in the record? We do not have the terms of that total disability policy in the record. Does that make a big difference? It doesn't make a big difference in the Cleveland line of cases because if you look at the Cleveland line of cases, it looks at the representation itself and not necessarily whether you got the benefits or not. Where the court looks at what did they say and what are the factual allegations that are made in those representations. And that's the key to Cleveland and the reason that Cleveland works is because you're looking at estoppel and you're looking at what did somebody say and what did they represent that was different than what they're trying to represent in their case. Well, I thought the point, I mean, maybe I'm wrong, but I thought the Supreme Court was saying in Cleveland, we all know what social security disability is about, you know, five step sequence and all that business. They're disabled from performing the regular duties of their job or any job, so on. And then, but the ADA may require them to make accommodations and then they can perform it. I don't see a real significant difference between that and the situation here. Well, I don't know that it matters what the actual policy said as to whether you got the disability. I mean, it is in the record that she did get the disability benefits. So she was found to be totally disabled. She got it for two weeks, right? She did. And so that's why I was just wondering if this so-called total disability was in some kind of alternative mode or something. It doesn't, the case law that we cited in our brief talks about the representations that are made. And if you look at the representations that are made throughout the different, whether it's for VA disability benefits or for pension disability benefits, or if you look at, for example, in the Ninth Circuit in 2006, the fewer case, there was a case there in which they talked about temporary disability benefits. And in that case, they applied Cleveland. Well, wasn't Cleveland, didn't Cleveland apply for total disability under the social security? They did. In Cleveland, it was total disability under social security. But if you look at the language in Cleveland, it just talks about disability benefits in general. And it appears that the case law after that... I mean, the same application was made there as it was made here, apparently. Well, it's saying that there was total disability. That is correct. And it was inconsistent. That is correct. And the main focus of Cleveland is to say that, like this court held in Holds Claw, that you can't change your story in litigation. Let me ask you a question. If this were to go to trial, and personally, I think this whole issue about what were the requirements of the job is a fact issue, but if it were to go to trial, couldn't you argue that she claimed, couldn't they say, well, she only got two weeks, which is totally consistent with what she was saying about give me two more weeks or give me light duty? They might could say that, but then as you pointed out earlier, she actually wasn't released or returned to work until December. So that is another inconsistency that you have out there. Well, under the ADA, would they have been... Suppose there had been no disability claim, and we're here just on whether she should have been fired or not. Under the ADA, would the hospital have been required to keep her on light duty all that time? That could have been considered as a reasonable accommodation, but again, that makes the assumption that they get past the Cleveland analysis. The Cleveland analysis, based on what Judge Sterritt found, is you've got to provide an adequate explanation, and you had some discussion up here from counsel opposite about the explanation they claim they offered at the district court level. If you go in and look at what was actually given in the briefing, and it starts on page 33 of their response, it's basically just two paragraphs. One paragraph that says, yes, we do think that Cleveland applies, but it doesn't make it inconsistent to apply for disability benefits. And the only explanation they gave is exactly the explanation that Your Honor read that Judge Sterritt found, which is that it's a timing issue. That because she applied for the benefits after she was terminated, therefore she shouldn't be penalized for applying for those benefits. Well, I mean, if that was all they argued, then I have doubts as to whether they could expand upon that on appeal. That's our position as well, Your Honor. I mean, the issue that was raised, and if you look at their request for oral argument, their request stated that they believe that Cleveland should not be applied beyond just the social security disability, that it was applied to short-term disability benefits, and that was going to be a unique and novel expansion. We've got case law out there that is exactly the opposite. Cleveland works. That analysis works. It's been applied in numerous different types of situations. And the reason it works is because it does provide an out for the plaintiff. If the plaintiff claims that their subsequent representation on a disability benefits form is consistent, they want to say that it is consistent, they have the opportunity to provide an explanation. They had that opportunity here. The explanation they gave is one that was completely overturned by this court in Reed. And even if you go to the stance where you say that, well, they should have considered the reasonable accommodation argument, or the disability application didn't consider that reasonable accommodation argument, in Crossley, which this court decided in 2014, that is the reasoning that they tried to give. The plaintiff in that case tried to give the reasoning to say that even where an application includes only a legal conclusion, you have to give an explanation. And the only explanation that was given at that time was a statement that they had a good faith belief that with a reasonable accommodation, they would be able to perform the job. And this court found that that was not an adequate explanation. And so even if you adopt the commission's argument today to say that, no, we did make these arguments, even though the papers would show that they didn't, even if they were to make those reasonable accommodation arguments, that's still not enough. That was just based on her good faith belief that she could do the job. There's not any other proof in the record whatsoever to show that she could do the essential functions. Well, and that gets into the essential functions. And the problem, I mean, what I read in the record was night and day about what the essential functions are. You say it's, I guess it's because they were moving around, I don't know the extent to which they had to move around obese patients. They had to move, they may have to move them onto a gurney, onto a table. Can't they get on the gurney themselves? Some may and some may not. Or sometimes these patients are sedated and they have to be moved while they're sedated. They're not sedated. Well, I know, they're not sedated when they get, I mean, so they sedate them in one room and then move them into the procedure room on a gurney and then transfer, that means there are two beds for every, that doesn't make sense. Well, they may be sedated while they're on the table, but regardless, with regard to the essential functions. That's what I'm saying. I don't think they have to move them around that much. Well, the essential functions of the job argument, I mean, what we rely upon to show that it is an essential function of the job is, one, the job description, which there is a case law out there saying we're entitled to that. Well, every LPN, that's a generic LPN description, but this lady had been working in the GI lab for, what, 15 years or something? Correct. And the statements of the co-workers are not consistent with what you're saying. But at the same time, Ms. Chambers every year signed a document where she checked off what the essential functions of her job were and signed at the bottom to say, yes, I understand those are the essential functions. And you've got not only the testimony, as you pointed out, the notes, but in the testimony of the EEOC's own expert, he testified that it was part of a position that she had, part of the job that she had to accomplish. Well, why doesn't the testimony of her co-workers and her own testimony create a question of fact? Because, one, I think it's self-serving. It's not necessarily an issue of fact. You mean a plaintiff's testimony and a co-worker's testimony doesn't count? I think that, again, this would only come into effect if they got past the Cleveland analysis. I mean, this still doesn't affect the fact that we were granted summary judgment based on the inconsistencies and the lack of any adequate explanation. But if you did look at that, I mean, we've got not only the expert that they had, Dr. Brawner, that said it was an essential function. We've also got her own treating physician who interviewed her and talked to her and made sure that her job worked. Well, he was willing to say that she could go back to light duty, right? He said that she could go back to light duty, but it's interesting, if you look at that exact record that talks about light duty, it also talks about the fact that her incapacity was unknown. If you look at, in the record, it's 1107. It's a certification of health provider. It talks about the incapacity. And again, this court has recognized, as most courts have, that if you can't show a duration of the incapacity, that any kind of request for leave or unlimited leave is not a reasonable accommodation. In the Owens case, you had almost exactly the same kind of facts as you have here. In the Owens case... She asked for two weeks. She didn't ask for unlimited time off. And she had an appointment with a doctor in two weeks, and she apparently had some indication that she might be released. Well, in her deposition, what she said was that she testified that two weeks would get her to her doctor visit, but she also testified she had no idea when she could return to work. And that's in the record at 709.710 and at 915.916. And in that case, it's similar to what you had in Owens. In the Owens case, you had an employee who called and said, I need two weeks off to get to my doctor's visit, and I expect they may release me to return to work. I hope that they'll release me to return to work, but I can't guarantee it. And what this court said was that was a request for indefinite leave, and it was not an adequate basis for an ADA claim. In this case, you've got all over the record where it's just constantly said, I hope I can return to work. I expect it. I planned on it. But there's no proof in this record, and you can look in all the doctor's notes. You can look in the depositions. There's nothing here to say that Ms. Chambers ever said, I will be back to work on X date. And so, therefore, the two-week kind of illusion about it was only a two-week request for additional leave is not adequate. I mean, because... Is there any explanation in the record for why the employer didn't renew the offer of the clerical job? There is evidence in the record that we say that they did renew the offer of the job. That Sandy Agnon said that at the time before she was terminated, they did renew that. I know, but when she asked for the two weeks off and before they terminate her, was there any renewal of the clerical job? There was. I mean, and that's, unfortunately, they dispute that it actually happened a second time. But we've got proof from Ms. Agnon that she did offer it a second time. All right. So isn't there a question of fact about that? That would be a question of fact. But the more important part about that is there's no question of fact that if Ms. Chambers thought she could just return to work, whether with light duty or not, why was the only request for accommodation that she asked for to be an additional two weeks? And that is clear from her deposition. In her deposition, she flat out said that the only request for accommodation that she wanted and that she requested was for this additional leave, the additional general medical leave. There's not any discussion from her in which she said, I would request light duty, even though she had been released to return to light duty by her own physician. Now this is, unfortunately, for their case, the same physician that two or three days later said that she was totally disabled with an unknown date of return. And to bring back, to me, that's, and to the case law, that's the most important thing. And that's why Cleveland is important and why there's not any doubt that Cleveland can benefits. If you look at, I mentioned the case from the Ninth Circuit, but if you also look at the case McFarland, which is from the Third Circuit in 2012, in the McFarland case, there was a representation on a short-term disability benefits application. And you can, the McFarland case went through all of the Cleveland analysis and looked at judicial estoppel and it talked about how the important part of this analysis is where there's an alleged prior inconsistent statement that affects subsequent statutory claims. It's hard to say. And so in that case, they held that the Cleveland analysis applied and there's no concern, no mention, no hesitation at all because it's short-term. McFarland. And the court determined in that case what she had is the employee said, well, it was the employer who determined that I was disabled, not me. And so in that case, the court said that's not enough. The statement to the short-term disability provider that he was unable to perform the material duties of his occupation, same that you've got here, if you look at the very bottom of that form that Ms. Chambers' doctor filled out and she adopted by looking at it, not changing it and sending it in, it says at the very bottom that she is, it's a verification that she is totally disabled from her occupation. And she reviewed that and submitted it to the doctor. But in the McFarland case, it says that that statement, that claim and the claim that you are able to do the job crash into each other. I mean, it flat out says two claims crash face first against one another and the first that stops the second. What about the Giles, the Giles case? In the Giles case, that was a case in which Cleveland was applied and that shows that Cleveland is not an insurmountable burden. In that case, the court came out, and that case was one in which you dealt with a disability pension. It wasn't a social security disability application. And that shows that Cleveland can apply to other types of benefits besides just social security disability. And in that case, this court looked at it and said, you know, here they did provide a detailed explanation and they found that that was an adequate explanation. In this case, we have no explanation as to why, you know, within the same almost 10-day period, you have an employee who says, I want just two weeks extra leave or I can return to work with a reasonable accommodation. And the very day after they're terminated, they've got both their doctor and themselves saying that they are totally disabled for an unknown amount of time. There's not any explanation in the record about that. This client was not totally disabled. She was released for live work. But again, the representation that she made to her short-term disability insurer was that she was totally disabled. That's the inconsistency that Cleveland shows she has to adequately explain. Wasn't this a temporary disability policy? Was it a temporary disability policy? It was a temporary disability policy. But as is shown in the McFarland case and in the fewer case, the fact that it's a short-term disability policy doesn't matter. What the courts focus on is the representation. But I mean, in Cleveland, the plaintiff argued, filed a claim for total disability under Social Security. They did. They did. I mean, what's the difference? There shouldn't be any difference because you focus on the representation. That's right. I mean, if you're focusing on the representation at the time of the termination, and this is when you have to look at it, at the time of the adverse employment action, at that time, you look at what this person is saying that is inconsistent. And in this case... Well, before you fired her, you have this statement from Dr. Porter, and I'm looking at record excerpts number 16 and 17, because they're... But as I see it, he signed something on October 13th that said she could do light duty. Next appointment scheduled 10-28. It will be evaluated at that date and says light duty. And then on October 11th, he also says release for light duty. So from your standpoint, people can say, okay, she's released for light duty. Why was light duty not available at that point? Well, we did offer light duty, and it's undisputed that we did offer the light duty. Now, you heard... Now, when you're talking about two months earlier? The clerical position that was offered. Well, I mean, could she have gone back? I thought her doctor wouldn't let her come back for the clerical work. She testified that he would not let her do that at that time, but she could have done that later on when she returned, and she made no mention of that whatsoever when she came back because the only request that she made was for additional time off. Well, but... But then her doctor statement says no pushing, pulling, lifting more than 10 pounds. Now, doesn't that at least constitute an implicit request for that accommodation? We would say it doesn't primarily also because it says in that same record, it says that the incapacity is from July 21st, 2011 to unknown. And again, it also says patient to be evaluated at this later date, which is October 28th. It doesn't say she's going to be released to return, and the case law with regard to request for indefinite leave talk about that you've got to give some sort of end date for the incapacity. And in this case, she couldn't give an end date for the incapacity. Under the summary judgment standard, we have to assume that the offer for clerical work was not renewed when she was terminated, isn't that right? That would be correct. So, why doesn't that create a question of fact? Because that doesn't get you past the Cleveland analysis. The Cleveland analysis, she still has to show that there's an adequate explanation for these inconsistencies between what is done. I see my time has expired, can I finish mine? That you have to give an explanation for the inconsistencies between the forms that she filed right after she was terminated and what she's trying to claim now that she was a qualified individual and could do the job. If she had the doctor's report saying she's released for light duty, why doesn't that explain the inconsistency? Because it still doesn't, they didn't give that as an explanation. Now, they can come in here today and say, well, here's what we believe are the, here's the explanations, but at the summary judgment standard, they did not give those explanations, and that was the time that they had to give the explanations. All right. Thank you very much. Thank you. Ms. Gants, back to you. So, what the defendant isn't reiterating is that the application said she was temporarily totally disabled. That's the only reason we said that Cleveland wasn't a perfect fit with this case, because by nature, her disability was short term and not serious, as opposed to most of the cases where this is an issue. However, Cleveland, the plaintiff, actually was found to have said, I am unable to work when she applied for permanent disability, and the court held that she had given enough of an explanation and that normally, these two kinds of claims can exist comfortably side by side. So, Cleveland actually would dictate that in a case where the disability was much less severe, and it's not obvious why there would be a conflict, given the routine nature of her surgery and the expected recovery time, which Agnon was a nurse and knew that she had had rotator cuff surgery, knew that she had been making steady progress because she had been reporting that to the hospital. And the commission did, in its brief, discuss the fact that the short term disability policy never asked about reasonable accommodation, and then went on to argue extensively the other of the two reasonable accommodations, perform her job with either of the two reasonable accommodations she asked for, and that is the test under Cleveland and Crossley. Whether there are facts that a reasonable jury could conclude from that the person was qualified under the Disability Act. Those two are different statutes. I'm looking at two things that, I mean, frankly, Dr. Porter seems to have been willing to sign more or less whatever was put in front of him. I don't think he was... Well, he testified that he expected her to be on light duty until the 28th. That was his testimony. Yeah, but what, I'm looking at these record excerpts 16 and 17, and on number 17, it's just a plain old return to work slip on light duty, in the river region form. No lifting, pulling, blah, blah. October 11. October 13, let's see, describe the medical facts which support the certification, rotator cuff tear, state the approximate date and probable duration of the patient's present incapacity, 7-21-2 unknown, will it be necessary for employee to take work only intermittently or less than full schedule? If yes, what schedule is recommended? Light duty. Are additional treatments required? Yes. Next appointment October 28th. So basically he's saying unknown light duty. Now, why could the employer not say that we do not have light duty available until an unknown date? Well, she asked for two weeks of leave and then to come back with light duty. The nature of her disability was a predictable outcome. It was a routine surgery. Look, we have colleagues who have rotator cuff surgery, and I mean, the hospital would have known how long it takes somebody to recover from rotator cuff, right? Correct. But the hospital did not replace her for over a year, and in the meantime, her co-workers covered and there were floaters in the department, so the hospital never made a showing that either it would have been an undue hardship to let her come back to light duty. In fact, they say that that was always an option, which doesn't make any sense with what they're arguing now. But the two weeks was never a request for indefinite leave. She always had asked for that two weeks, knowing that what she hoped was going to be her last appointment was on the 28th, and on the 28th, her short-term disability benefits were discontinued because she was released without restriction. But even if she had ... So at the same time Dr. Porter is releasing her to light duty and saying limit use of your left arm, he also testified that she could do most of her job, just take it easy, knowing that she was making progress, going to physical therapy, that she had been able to do her job before the surgery, in the months before she'd been able to get the surgery. He didn't say that. What? When did he say, well, she could actually do her job if she took it easy? He didn't say that. Well, he said when he was asked, what is light duty? What do you mean by this when you put this? He testified, light duty means light duty, just take it easy, don't use your left arm too much. That was in his deposition. But he also testified that she said her pain level was reduced after the surgery than before the surgery, yet in the months when she was injured, but before she had actually had the surgery, she was doing her job. She testified she had not taken any leave in relation to that injury, which shows that she could actually do her job with or without a reasonable accommodation. And Cleveland, again, says that if you explain that there are reasonable accommodations available, which the commission did in its brief opposing summary judgment, then that would allow a reasonable jury to see that notwithstanding these statements they made on a short-term disability policy saying temporarily totally disabled until unknown, which by nature has to be less than six months, then that is enough to overcome this potential conflict between asking for disability and alleging that you are qualified within the meaning of the Americans with Disabilities Act. Cleveland actually dictates that summary judgment should have been denied. Let me, just one, since you're way over your red light, I have one quick question. If her doctor had not, in fact, released her to return to work, and she had, in fact, gotten four months of disability, so-called temperate, would we be here today? Four months of disability and not gone back to work? Yeah. In other words, you're saying that these positions are not inconsistent. Well, suppose she'd gotten four months of temporary disability instead. Well, are you saying is, by definition, four months of additional leave per se unreasonable? Yes. No, I would not say that. The ADA requires an individualized assessment. It depends on the situation. It depends on the situation. If there is a definite return date and the employer is not required to hold the job open indefinitely, then it can, in some circumstances, and other courts have held that. I just wondered how far you were going to go. But she also had six weeks of sick leave that she was not able to use at the time she was terminated, Your Honor. Okay. Thank you very much, Counsel. We have your case.